IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| V. | : | CRIMINAL NO. 17-171 |
| SARAH NORTON | : | |

**TRIAL MEMORANDUM**

I.  **Background**:

Defendant Sarah Norton is charged by indictment with two counts: Count One, attempted enticement of a minor, in violation of Title 18, United States Code, Section 2422(b), and Count Two, travel to engage in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b). Trial is scheduled to commence on December 9, 2019. Trial is expected to last approximately three days.

II. **Summary of Facts**:

Defendant Sarah Norton's crimes came to the attention of the Upper Macungie Police Department through a 14-year-old boy's father and stepmother when they discovered their son had been communicating with a woman they believed was 25 years old. The parents gave consent for law enforcement to examine electronic devices used by the victim, their son. Through these devices, and further investigative work, law enforcement was able to identify the woman the victim had been communicating with as Sarah Norton, a 38-year-old woman who lived in Connecticut.

Examination of the victim's electronic devices document that Norton and the victim met when playing the same game on the Internet connected gaming console, PlayStation. They started privately communicating in or around August 2017. Norton was keenly aware the victim was

1

only 14 years old.  Norton lied about her age and represented herself as 25-year-old. Communications between Norton and the victim were recovered through both the PlayStation gaming device as well as the victim's mobile telephone.  Their communications started with Norton acting "flirtatious" and acknowledging that a relationship with the victim would be wrong and he should look her up in a few years.   However, she continues to communicate with the victim progressively getting to the point of sexual communications. Norton stated she wanted to travel to meet the victim in Pennsylvania and got angry when the victim did not initially react in the way she expected him to.

Some of the recovered communications between Norton and the victim included:

**Norton:** **Baby u have no idea what is in store u.  Thank go ur young and will be able get it back up for me quick cause u are gonna cum real fast.**

Minor: Good I'll be ready (smiley face)

**Norton:** **Just try to forgive me after i get done with u.  Especially the 1st time we do it.  Cause i am sexually frustrated cause of u.   And ur a virgin and I am gonna tear that dick up.**

Minor: Don't worry i will be ready for it (smiley face with tongue out)

**Norton:** **I tried to tell you i was dead serious.  My pussy physically hurts cause i want u inside me that bad.  Its horrible for me.**

Minor: Wow now i feel so bad for u.

Other exchanges included:

**Norton:** **U know i want to come see u right?  So please don't encourage me.**

Minor: I'm not going to but i want to see you to its not fair.

_____

**Norton:** **So if I come out there, any issues with me stealing u away?  I don't want to get u in trouble.**

Minor:       I don't care, I already said.

**Norton:**       **I do!! I wold rather be able to talk to u all the time rather than seeing u once and then we cant talk no more.   I would die.**

Minor:       Me too

**Norton:**       **Honestly, do u have parental supervision where ever u go?**

**Norton:**       **Play the game so we can talk**

_____

**Norton:**       **I am kinda disappointed with you.   I wanted to see u.**

Minor:       I know

Minor:       R U upset (sad face)

**Norton:**       **I am not gonna allow myself to get there.   I told u b4, I knew u were fucking with my head, and I chose to listen to u again.   Fool me once.**

Minor:       Shame on me

**Norton:**       **Exactly**

**Norton:**       **U got me twice, so its on me now.**

**Norton:**       **Did u think I wouldn't see ur new "changes?" nice touch, So really, fuck u sam.**

Minor:       I did not change, And u to, LOL.   R u going back on or no.

**Norton:**       **Like really?   1st us wanna see me then u don't, then u change the group name.   Apparently u have.   Am I playing rebound 4 u?   Actually, I don't wanna know, I already know.**

Minor:       I want to see u

**Norton:**       **Seriously, whats going on.**

(Several messages exchanged with Norton accusing Minor of liking someone else.)

Minor: There is nothing going on I telling u the truth.

Minor: Plz know that I am telling u the truth

**Norton: I don't know.   I was gonna drive 8 hrs to visti u and u r acting like u cant be bothered. I am tired of throwing myself at u.   There is only so much rejection I can take from one person.**

Minor: Im no rejecting u at all if you want to u can.

Minor: I never do anything in the weekends so u can.

**Norton: Since u acted like u didn't want to see me, I made other plans.   That's why I was trying to make lock something down with u.   But seriously, its getting old.   I cant put myself out ther no more.**

**Norton: I never ever through myself at anybody, and ur tossing me to the side. I cant do it.**

Minor: Plz do I really really really want to see u so badly u will make me happier than I am and im not tossing u to the side.

**Norton: I don't know now.   I wouldn't be able to get out there till late and I know u cant sleep out.   I might try again next month.   By the way its going.   I doubt it.**

Minor: Ok (sad face)

**Norton: Its really ironic how u actually show enthusium after the fact.   U know that had u acted this way earlier, I would be on my way out there in a couple of hours.   But I think its just an act with u.**

Minor: Its not

**Norton: so why bullshit me earlier about wanting to see me**

**Norton: But I don't want to get im trouble.  Expecially if u think u will get caught.   I just don't know if u could do this without getting in trouble.**

Minor: I said to go to park and then u can take me anywhere.

**Norton: But I wont be able to get out there till 9 and that's late for u**

Minor: Then really early in the morning

4

| | |
|---|---|
| **Norton:** | **Ok.  How early?  And will I really be able to take u awar from the park?** |
| Minor: | Not for the day but for until what my mom would say for what time, ow long does it take for us to get to where I live |

There are some communications about how long it will take for Norton to get to Pennsylvania, her plans to check into a hotel, and that if the victim is lonely she will be only five minutes away and he can keep her warm in bed.   Then the following exchange took place:

| | |
|---|---|
| **Norton:** | **Really, like I teased u druign my peak hours?  I think u like it** |
| Minor: | I did I like it a lot |
| **Norton:** | **Well, I am trying to get there during those hours in case u wanna see for urself** |
| Minor: | Remember to go to the park and plz yes |
| **Norton:** | **I sill but how am I gonn get a hold of u that late?** |
| Minor: | I know I wish I had my phone now. |
| **Norton:** | **Well figure it out.  I gotta go.  I am running late.  I want u bad so please figure it out.  I will let u know when I am on the road.** |

On October 14, 2017, Norton traveled from her home in Connecticut to Pennsylvania and checked into the Super 8 Hotel Allentown West. She met the victim in a park the next day.

A court order was obtained for Norton's phone records including cell site information. The cell site records establish that Norton traveled on October 14 and 15th round trip from Connecticut to Pennsylvania   The travel records are consistent with her traveling from her home in Connecticut to the Super 8 in Pennsylvania on October 14, and returning to Connecticut later afternoon on October 15.

Norton was interviewed by a trooper with the Connecticut State Police at the request of the Upper Macungie Police Department. Norton admitted she was in communication with the victim and that she knew he was only 14-years-old. She said she developed feelings for him. She also admitted to telling the victim she was only 25-years-old and that she did engage in sexual communications with the victim. She stated she did drive from Connecticut to Pennsylvania to be with the victim sexually but claimed she changed her mind when she saw him, stating she "realized the relationship was wrong."

### III.   Elements of Offenses:

#### A.   Count One:   Enticement of a Minor to Engage in Illicit Sexual Activity – Elements

Norton is charged in Count One of the Indictment with committing the offense of enticement of a minor to engage in illicit sexual activity, in violation of Title 18, United States Code, Section 2422(b). The government must prove the following elements beyond a reasonable doubt:

First: That the defendant attempted to knowingly persuade, induce, entice, or coerce an individual to engage in any sexual activity;

Second: That the defendant used the Internet *[the mail][a telephone][a cell phone][any facility or means of [interstate][foreign]*commerce] to do so;

Third: That the defendant believed that such individual was less than 18 years of age; and

Fourth: That, had the sexual activity actually occurred, the defendant could be charged with the criminal offense of under the laws of the Commonwealth of Pennsylvania.

6

It is not necessary for the government to prove the individual was in fact less than 18 years of age; but it is necessary for the government to prove that the defendant believed that the individual to be under the age of 18.

It is not necessary for the government to prove that the individual was actually persuaded, induced, enticed or coerced into engaging in the described sexual activity, as long as the government proves the defendant intended to persuade, induce, entice or coerce the individual to engage in some form of unlawful sexual activity with the defendant and knowingly took some action that was a substantial step toward bringing it about.  A substantial step is conduct that strongly corroborates the firmness of the defendant's criminal attempt. Mere preparation is not enough.

As a matter of law, the following are crimes under the law of Pennsylvania:

Involuntary Deviate Sexual Intercourse, 18 Pa. C.S. § 3123 – The defendant solicited a person under the age of 16, when she was four or more years older, to engage in deviate sexual intercourse, which includes oral sex, that it, sex by the mouth of one person with the genitals of another.

Statutory Sexual Assault, 18 Pa. C.S. § 3122.1 – The defendant solicited a person under the age of 16 years, when she was four or more years older, to engage in sexual intercourse, including sex by the mouth or by the anus, with some penetration, however slight.

**B.     Count Two:    Travel to engage in illicit sexual conduct – Elements**:

Norton is charged in Count Two of the Indictment with committing the offense of travel to engage in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b).  In order to find the defendant guilty of the travel to engage is illicit sexual conduct with

a minor, you must find that the government proved beyond a reasonable doubt each of the following two (2) elements:

    First:        The defendant traveled in interstate commerce; and

    Second:    That the defendant purpose in traveling in interstate commerce was to engage in illicit sexual conduct with a person she believed to be a minor.

## IV.  Evidentiary Issues:

### A.  Government's Motion in Limine

On November 26, 2019, the government filed a motion in limine to confine the defendant to eliciting only relevant evidence and testimony at trial and not evidence and testimony designed to prejudice the jury or attempt to elicit their sympathy and invite jury nullification. This motion will need to be resolved before trial.

### B.  Norton's recorded statement

The government intends to elicit from the interviewing agent those statements Norton made that were against her interest. The government can do so as the statements are admissions of a party opponent under Fed. R. Evid. 801(d)(2). Such evidence, when introduced by the government against the opposing party, is, by definition, not hearsay. Fed. R. Evid. 801(d). Thus, for example, emails may be admitted against the party who wrote them, *United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000), and confessions may be admitted against the party who gave them. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

However, Norton's counsel may not elicit defendant's statements through the agent (or any witness). Such statements may not be admitted <u>by</u> the party who made the statements, because Rule 801(d)(2) does not allow a party "to introduce his or her *own* statements through the testimony

of other witnesses." *Id.* (emphasis in original). The statements would be offered by the defendant for their truth, Fed. R. Evid. 801(c), and would impermissibly enable the defendant to introduce her self-serving statements through the government's witnesses without subjecting the defendant to cross-examination. *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) (court of appeals upheld district court's ruling that tape recording of a conversation between a codefendant and a government informant that defendant considered exculpatory on the issue of his knowledge of illegality was inadmissible because it was not offered "against a party" as required by Rule 801(d)(2)). Indeed, if such statements were admissible, "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *McDaniel*, 398 F.3d at 545; *see also, United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) (Rule 801(d)(2)(A) simply requires that an admission at issue be contrary to a party's position at trial, and that the requirement that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (a party's statement, if offered against him, is not hearsay under Rule 801(d)(2)(A), but is hearsay and not admissible if offered by the party himself); *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988); *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985).

**C.     Stipulations**

The defendant, through counsel, has conveyed she is stipulating to the communications between her and the victim, including communications through the gaming console, Playstation, the victim's Alcatrel Tracphone, and a Windows-based mobile telephone, as well as records obtained via legal process from AT&T, include toll records and cell site data.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Sherri A. Stephan
SHERRI A. STEPHAN
Assistant United States Attorney

Dated:    November 26, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing trial memorandum to be served by email and electronic filing upon counsel for the defendant:

>David Jay Glassman
>1500 Market Street, 12th Floor
>Philadelphia, PA 19102
>davidjayglassman@gmail.com

>/s/ Sherri A. Stephan
>SHERRI A. STEPHAN
>Assistant United States Attorney

Dated:   November 26, 2019