# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO: 17- 171** |
| **SARAH NORTON** | : | |

**GOVERNMENT'S MOTIONS *IN LIMINE* TO PRECLUDE DEFENDANT FROM INTRODUCING EVIDENCE OF OR ARGUMENT FOR JURY NULLIFICATION, AND OTHER IRRELEVANT INFORMATION**

The United States of America, by its undersigned attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Sherri A. Stephan, Assistant United States Attorney for the district, hereby moves this Court to prohibit the defendant from presenting evidence of or argument for jury nullification, or other irrelevant evidence, as described in detail below, either through the testimony of witnesses or the argument of counsel. In support of this motion, the government offers the following:

I. **INRODUCTION**

Defendant Sarah Norton is charged by indictment with two counts: Count One, attempted enticement of a minor, in violation of Title 18, United States Code, Section 2422(b), and Count Two, travel to engage in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b). Trial is scheduled to commence on December 9, 2019. The government anticipates the defendant may attempt to encourage jury nullification by attempting to play on the juror's emotions and sympathy, such as by eliciting and offering irrelevant, inadmissible evidence. Defendant may argue or offer evidence such as, but not limited to the following: she is the mother

1

of three children, that she has a severe medical condition, she was suicidal when younger, she was molested when younger, and she was depressed and lonely (whether any of it is true or not) when she engaged in sexually explicit communications with a 14-year-old boy then traveled from her home in Connecticut to Pennsylvania, checked into a hotel room, and intended to have sexual contact with the 14 year old. As discussed below, such testimony and evidence is irrelevant and inadmissible in this case. Furthermore, any attempt to inform the jurors of the potential sentence the defendant is exposed to, if convicted, is also irrelevant and inadmissible.

II.   **SUMMARY OF FACTS**

Defendant Sarah Norton's crimes came to the attention of the Upper Macungie Police Department through a 14-year-old boy's father and stepmother when they discovered their son had been communicating with a woman they believed was 25 years old. The parents gave consent for law enforcement to examine electronic devices used by the victim, their son. Through these devices, and further investigative work, law enforcement was able to identify the woman the victim had been communicating with as Sarah Norton, a 38-year-old woman who lived in Connecticut.

Examination of the victim's electronic devices document that Norton and the victim met when playing the same game on the Internet connected gaming console, PlayStation. They started privately communicating in or around August 2017. Norton was keenly aware the victim was only 14 years old. Norton lied about her age and represented herself as 25-year-old. Communications between Norton and the victim were recovered through both the PlayStation gaming device as well as the victim's mobile telephone. Their communications started with Norton acting "flirtatious" and acknowledging that a relationship with the victim would be wrong and he should look her up in a few years. However, she continues to communicate with the victim progressively getting to the point of sexual communications. Norton stated she wanted to travel to meet the victim in

Pennsylvania and got angry when the victim did not initially react in the way she expected him to.

Some of the recovered communications between Norton and the victim included:

**Norton:** **Baby u have no idea what is in store u. Thank go ur young and will be able get it back up for me quick cause u are gonna cum real fast.**

Minor: Good I'll be ready (smiley face)

**Norton:** **Just try to forgive me after i get done with u. Especially the 1st time we do it. Cause i am sexually frustrated cause of u. And ur a virgin and I am gonna tear that dick up.**

Minor: Don't worry i will be ready for it (smiley face with tongue out)

**Norton:** **I tried to tell you i was dead serious. My pussy physically hurts cause i want u inside me that bad. Its horrible for me.**

Minor: Wow now i feel so bad for u.

Other exchanges included:

**Norton:** **U know i want to come see u right? So please don't encourage me.**

Minor: I'm not going to but i want to see you to its not fair.

———

**Norton:** **So if I come out there, any issues with me stealing u away? I don't want to get u in trouble.**
Minor: I don't care, I already said.

**Norton:** **I do!! I wold rather be able to talk to u all the time rather than seeing u once and then we cant talk no more. I would die.**

Minor: Me too

**Norton:** **Honestly, do u have parental supervision where ever u go?**

**Norton:** **Play the game so we can talk**

———

**Norton:** **I am kinda disappointed with you. I wanted to see u.**

3

Minor:      I know

Minor:      R U upset (sad face)

**Norton:    I am not gonna allow myself to get there. I told u b4, I knew u were fucking with my head, and I chose to listen to u again. Fool me once.**

Minor:      Shame on me

**Norton:    Exactly**

**Norton:    U got me twice, so its on me now.**

**Norton:    Did u think I wouldn't see ur new "changes?" nice touch, So really, fuck u sam.**

Minor:      I did not change, And u to, LOL. R u going back on or no.

**Norton:    Like really? 1st us wanna see me then u don't, then u change the group name. Apparently u have. Am I playing rebound 4 u? Actually, I don't wanna know, I already know.**

Minor:      I want to see u

**Norton:    Seriously, whats going on.**

(Several messages exchanged with Norton accusing Minor of liking someone else.)

Minor:      There is nothing going on I telling u the truth.

Minor:      Plz know that I am telling u the truth

**Norton:    I don't know. I was gonna drive 8 hrs to visti u and u r acting like u cant be bothered. I am tired of throwing myself at u. There is only so much rejection I can take from one person.**

Minor:      Im no rejecting u at all if you want to u can.

Minor:      I never do anything in the weekends so u can.

**Norton:    Since u acted like u didn't want to see me, I made other plans. That's why I was trying to make lock something down with u. But seriously, its getting old. I cant put myself out ther no more.**

**Norton:    I never ever through myself at anybody, and ur tossing me to the side. I cant do it.**

4

| | |
|---|---|
| Minor: | Plz do I really really really want to see u so badly u will make me happier than I am and im not tossing u to the side. |
| **Norton:** | **I don't know now.  I wouldn't be able to get out there till late and I know u cant sleep out.  I might try again next month.  By the way its going.  I doubt it.** |
| Minor: | Ok (sad face) |
| **Norton:** | **Its really ironic how u actually show enthusium after the fact.  U know that had u acted this way earlier, I would be on my way out there in a couple of hours.  But I think its just an act with u.** |
| Minor: | Its not |
| **Norton:** | **so why bullshit me earlier about wanting to see me** |
| **Norton:** | **But I don't want to get im trouble.  Expecially if u think u will get caught.  I just don't know if u could do this without getting in trouble.** |
| Minor: | I said to go to park and then u can take me anywhere. |
| **Norton:** | **But I wont be able to get out there till 9 and that's late for u** |
| Minor: | Then really early in the morning |
| **Norton:** | **Ok.  How early?  And will I really be able to take u awar from the park?** |
| Minor: | Not for the day but for until what my mom would say for what time, ow long does it take for us to get to where I live |

There are some communications about how long it will take for Norton to get to Pennsylvania, her plans to check into a hotel, and that if the victim is lonely she will be only five minutes away and he can keep her warm in bed.  Then the following exchange took place:

| | |
|---|---|
| **Norton:** | **Really, like I teased u druign my peak hours?  I think u like it** |
| Minor: | I did I like it a lot |
| **Norton:** | **Well, I am trying to get there during those hours in case u wanna see for urself** |

5

| | |
|---|---|
| Minor: | Remember to go to the park and plz yes |
| **Norton:** | **I sill but how am I gonn get a hold of u that late?** |
| Minor: | I know I wish I had my phone now. |
| **Norton:** | **Well figure it out.  I gotta go.  I am running late.  I want u bad so please figure it out.  I will let u know when I am on the road.** |

On October 14, 2017, Norton traveled from her home in Connecticut to Pennsylvania and checked into the Super 8 Hotel Allentown West.  She met the victim in a park the next day.

A court order was obtained for Norton's phone records including cell site information.  The cell site records establish that Norton traveled on October 14 and 15th round trip from Connecticut to Pennsylvania  The travel records are consistent with her traveling from her home in Connecticut to the Super 8 in Pennsylvania on October 14, and returning to Connecticut later afternoon on October 15.

Norton was interviewed by a trooper with the Connecticut State Police at the request of the Upper Macungie Police Department.  Norton admitted she was in communication with the victim and that she knew he was only 14-years-old.  She said she developed feelings for him.  She also admitted to telling the victim, she was only 25-years-old and that she did engage in sexual communications with the victim.  She stated she did drive from Connecticut to Pennsylvania to be with the victim sexually but claimed she changed her mind when she saw him, stating she "realized the relationship was wrong."

III. **LEGAL ANALYSYS**

Pursuant to Rule 401 of the Federal Rules of Evidence, "relevant evidence" is limited to evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  Fed. R. Evid. 401 (emphasis added).  It is axiomatic that evidence "which is not relevant is not admissible."  Fed. R. Evid. 402.   The

government anticipates the defendant may try to inflame the jury and attempt to garner sympathy for herself, because she is a mother of three, claims to have a medical condition, claims she was suicidal when younger, claims she was sexually abused as a child, claims that she was lonely and depressed, among other attempts to play on juror sympathy, including the possible lengthy term of imprisonment she faces if convicted. Such evidence and testimony is wholly irrelevant and invite jury nullification.

Jury nullification occurs when a jury disregards the law and the judge's instructions as to the law and acquits a criminal defendant who is guilty. In *United States v. Boone*, 458 F.3d 321 (3d Cir. 2006), the Third Circuit stated that it is "manifest" that a juror who "commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role." *Id*. at 326. Thus, *Boone* held, and *United States v. Kemp*, 500 F.3d 257, 303-06 (3d Cir. 2007), confirmed, that a judge in certain circumstances may remove a juror who attempts to engage in nullification. *See also, e.g., United States v. Desmond*, 670 F.2d 414, 416 (3d Cir. 1982) (explaining that 'jury nullification' refers to verdicts in which jurors decide cases "in the teeth of both law and fact'" and "'against the law and the facts.'" (*quoting Horning v. District of Columbia,* 254 U.S. 135 (1920).

Federal courts "categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) (*quoting United States Thomas*, 116 F.3d 606, 614). This is so because jury nullification relies on a jury's violation of its sworn duty to follow and apply the law as instructed by the court. "Neither the court nor counsel should encourage jurors to exercise [nullification] power" and the Court may preclude defense attorneys from any attempts to present evidence or argument of nullification. *United States v.*

*Perez*, 86 F.3d 735, 736 (7th Cir. 1996).  To avoid such results, courts must discourage jury nullification.  *See Desmond*, 670 F.2d at 416-17.

If defense counsel chooses to encourage jurors to nullify the law, the Court shall step in and "block defense attorneys' attempts to serenade a jury with the siren song of nullification." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (affirming the district court's decision to "instruct the jury on their duty to the exclusion of jury nullification.")

Nullification arguments are also prohibited by Rules 401 and 402 of the Federal Rules of Evidence.  Jury nullification evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  Fed. R. Evid. 401.  Irrelevant evidence is inadmissible.  See Fed. R. Evid. 402.

As stated, here, the government anticipates the defendant may attempt to encourage jury nullification by attempting to play on the juror's emotions and sympathy, by eliciting and offering irrelevant, inadmissible evidence.  The defendant should not be permitted to argue that she has three children, has a claimed severe medical condition, was suicidal when younger, was molested when younger, and was depressed and lonely (whether true or not) when she engaged in sexually explicit communications with a 14-year-old boy then traveled from her home in Connecticut to Pennsylvania, checked into a hotel room, and intended to have sexual contact with the 14 year old.  None of the purported facts are relevant to any fact at issue or to the determination of the defendant's guilt or innocence, and none should be admitted at trial.

The government also anticipates the defendant may attempt to improperly influence the jury's determination of guilt or innocence by trying to introduce evidence related to the potential penalties that the defendant faces if convicted at trial.  "In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law.  The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be."  *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993) (*citing Rogers*, 422 U.S. at 40; and *Government of the Virgin*

*Islands v. Fredericks*, 578 F.2d 927, 935 (3d Cir. 1978)). The jury should not consider the potential sentence when determining guilt or innocence. When, such as in this case, the jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1995) (*citing Rogers v. United States*, 422 U.S. 35, 40 (1975)). The presentation of information regarding the defendant's potential sentence to the jury creates a substantial danger that the jury will consciously or subconsciously allow knowledge of such punishment to impact their deliberations on the question of the defendant's guilt or innocence. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon*, 512 U.S. at 579. Information regarding the consequences of a verdict is irrelevant to the jury's task and inadmissible. Providing jurors with sentencing information invites them to consider matters outside the facts and evidence and "creates a strong possibility of confusion." *Id.*; see *Pop v. United States*, 298 F.2d 507, 508 (5th Cir. 1962). Any discussion through argument or witness testimony regarding the potential sentence that the defendant faces if convicted is improper and should be precluded at trial.

IV.     **CONCLUSION**

Accordingly, the government respectfully requests that the defendant be prohibited from presenting evidence of or argument for jury nullification, or other irrelevant evidence, as described above, either through the testimony of witnesses or the argument of counsel.

                                      Respectfully submitted,

                                      WILLIAM M. McSWAIN
                                      United States Attorney


                                      /s/ Sherri A. Stephan
                                      SHERRI A. STEPHAN
                                      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the Government's Motion in Limine to be served this date by electronic mail upon the following individual:

>David Jay Glassman, Esquire
>1500 Market Street, 12th Floor
>Philadelphia, PA 19102
>davidjayglassman@gmail.com

    /s/ Sherri A. Stephan
SHERRI A. STEPHAN
Assistant United States Attorney

Date:  November 26, 2019