UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No. 5:18-cr-00171 |
| v. | : | No. 2:23-cv-03484 |
| | : | |
| SARAH NORTON, | : | |
| Defendant/ Petitioner | : | |

**O P I N I O N**
**Motion to Vacate Sentence, 28 U.S.C. § 2255, ECF No. 96 – Denied**

**Joseph F. Leeson, Jr.**                                               **June 26, 2026**
**United States District Judge**

Petitioner Sarah Norton filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 challenging her conviction and sentence for attempting to entice a minor to engage in illicit sexual activity and for travel to engage in illicit sexual conduct with a minor.  She raises numerous grounds for relief based on the alleged ineffectiveness of trial counsel.  For the reasons set forth below, the Motion to Vacate is denied.

I.     **BACKGROUND**

A.     **Conviction and Sentence**

On April 26, 2018, Norton was charged by Indictment with: (1) attempt to entice a minor to engage in illicit sexual activity, in violation of 18 U.S.C. § 2422(b),[1] and (2) travel in interstate commerce with intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b).  *See* ECF No. 1.  These charges arose from sexually explicit

---

1     Count One for attempt to entice a minor to engage in illicit sexual activity carried a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment.  *See* 18 U.S.C. § 2422(b).

communications by Norton, who was thirty-eight (38) years old, with a fourteen (14) year-old boy in Pennsylvania.[2]  Norton, who lived in Connecticut, misrepresented her age and the fact that she did not have children in order to entice the minor victim to engage in illicit sexual conduct.  Norton's communications (PlayStation messages, chats, emails, and text messages) continued for several months and grew increasingly explicit over time.  When the minor victim did not respond as Norton wanted, she got angry at him.  In October 2017, Norton traveled from Connecticut to Pennsylvania to meet the minor victim.  She rented a hotel room close to where the minor victim lived and texted him the morning she left: "I can't wait to see you. I am stalking you now. Remember, call me if you want to come, keep my bed warm tonight, I will only be five minutes away, kiss, kiss."  N.T. 142:10-14, Trial Day II, ECF No. 88.

On December 11, 2019, following a three-day jury trial, Norton was convicted of both counts.  *See* ECF No. 65.  Norton was sentenced on January 28, 2021, to one hundred sixty-eight (168) months imprisonment, twenty (20) years supervised release, and assessments in the total amount of $5,200.  *See* ECF No. 80.  Norton was represented by David Jay Glassman, Esquire, at trial and at sentencing.

B.    **Direct Appeal and Motion to Vacate**

A timely Notice of Appeal was filed on Norton's behalf by an attorney from the Federal Community Defender's Office.[3]  *See* ECF Nos. 82, 83.  On appeal, Norton argued: (1) her due process rights were violated because this Court based her sentence on inaccurate information and

---

[2]    The description herein of Norton's offense is taken from the trial testimony and is also consistent with the Presentence Report.  *See* ECF Nos. 87-89.  *See also* N.T. 40:23 – 41:23, Sentencing, ECF No. 90.

[3]    The Federal Community Defender's Office represented Norton between May 2, 2018, (when Norton had her initial appearance and arraignment) and August 16, 2019, (when Attorney Glassman, who was privately retained, entered his appearance) and again for the direct appeal.

(2) this Court erred when it imposed a $5,000 JVTA[4] assessment because she is indigent.  *See* App. Opn. 9, ECF No. 95.  The Third Circuit Court of Appeals rejected both arguments for lack of merit and affirmed her sentence.  *See id.*

On or about September 6, 2023, Norton timely filed a pro se Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255.  *See* Mot., ECF No. 96.  She raises ten (10) grounds for relief, the first nine are ineffective assistance of counsel claims and the tenth is a claim of court error.  *See id.*  Norton contends:[5]

1. She was unable to make an informed decision about proceeding to trial or pleading guilty because defense counsel: (i) led her to believe she could confront the minor victim at trial; *(ii) failed to advise her of sentencing enhancements and variances; and (iii) did not explain the elements of the charged offenses.*

2. Defense counsel failed to investigate by: (i) not analyzing/responding to a discrepancy in the phone records or presenting additional text messages; *(ii) not visiting the park in Pennsylvania where Norton met up with the minor victim;* and (iii) not interviewing witnesses, *including* the minor victim.

3. Defense counsel did not adequately prepare for trial because he: *(i) did not pick up full discovery from the Federal Defenders' Office until a few days before trial; (ii) did not review discovery in depth, nor show it to Norton until the day of trial; (iii) did not make or enter any trial exhibits; and* (iv) did not prepare for the Government proving its case

---

[4]    Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
[5]    The grounds described herein are not word for word from the Motion to Vacate.  Any of the grounds or parts thereof that appear in italics were withdrawn by habeas counsel, with the consent of Norton, at the evidentiary hearing.  *See* Ev. N.T. 45:1 – 47:19, Evidentiary Hearing, (hereinafter "Ev. N.T. __"), ECF No. 123.

without calling the minor victim as a witness *or introducing into evidence the fact that Norton returned to the park where she and the minor victim had met earlier that day*.

4. *Defense counsel failed to: (i) cross-examine the minor-victim's father or the detective about missing text messages; (ii) dispute certain evidence, including two of the global positioning maps, or object to the prosecutor's statements that Norton returned to the park; and (iii) prepare Norton for her testimony.*

5. Defense counsel should have called the minor victim as a rebuttal witness.

6. Defense counsel failed to file pretrial motions to: (i) make the minor victim testify as a witness; and (ii) secure *conflicting/*missing discovery regarding phone records.

7. *Defense counsel did not adequately prepare for trial because: (i) he only met with Norton three times before trial and spent little time with her during trial; and (ii) only gave Norton discovery the day of trial, but asked her to make trial exhibits.*

8. *Defense counsel did not adequately prepare for sentencing because he (i) did not review the Presentence Report with Norton in depth; (ii) did not object to the prosecutor's statement that Norton returned to the park in the afternoon, nor object to misstatements about Norton's trial testimony; and (iii) did not oppose the term of supervised release and JVTA assessment; and (iv) did not obtain a statement or mental evaluation from the Norton's therapist.*

9. *Defense counsel did not discuss an appeal or file an appeal on Norton's behalf.*

10. *The Court improperly admitted "conflicting" exhibits concerning text messages and telephone records.*

*See id.* On November 6, 2023, the Government filed a Response, asserting that an evidentiary hearing was needed on the first ground and that all other grounds should be denied on the current

record.  *See* Resp., ECF No. 103.  Norton filed a pro se reply in support of the Motion to Vacate. *See* Reply, ECF No. 110.  Thereafter, the Court determined that an evidentiary hearing was needed and appointed counsel to represent Norton.  *See* ECF No. 112.  Newly appointed counsel was permitted to file a supplemental brief in support of the Motion to Vacate, which he chose not to file, and was advised to inform the Court if he intended to present evidence at the evidentiary hearing regarding any grounds other than ground one.  *See* ECF No. 115.  Appointed counsel responded asserting that grounds one, two, three, five, and six raised similar issues and that evidence may be presented on these grounds as well.  An evidentiary hearing was held on July 30, 2025, and both counsel subsequently filed proposed findings of fact and conclusions of law. *See* ECF Nos. 125-126.  Additionally, the Government was permitted to supplement the record. *See* ECF Nos. 127-128, Exs. 4-5.

### C.      Evidentiary Hearing

Norton's trial counsel testified at the evidentiary hearing, as did Norton.  This Court, having listened to their testimony and having viewed their demeanors, finds that trial counsel's testimony was credible because, *inter alia*, counsel's account was believable and his testimony was consistent.  In contrast, Norton's testimony was not credible because it was contradicted by the record,[6] was not believable and/or was specifically rejected by the jury at

---

[6]      For example, Norton testified at the evidentiary hearing that she did not intend to testify at trial and that it was not until the second or third day of trial, when she learned trial counsel had not secured the appearance of the minor victim to testify, "then I had no choice at that point than to testify."  *See* Ev. N.T. 76:21 – 78:18.  However, before jury selection began, trial counsel informed the Court, in the presence of Norton, that she would be testifying, *see* N.T. 8:5, Day II, ECF No. 87, and informed the jury during opening statements "Ms. Norton is going to testify," N.T. 23:1, Day Two, ECF No. 88.  Several weeks before that, on November 18, 2019, trial counsel informed Government counsel he would "have 1 witness, the Defendant."  *See* Ex. 2.

5

trial,[7] and was inconsistent.[8]

Trial counsel testified that he had been practicing law for forty-four years, originally on the prosecution side, and had been handling criminal defense for the previous thirty-five years. *See* Ev. N.T. 41:21 – 42:24.  Counsel explained that because Norton was living in Connecticut, they initially had contact via telephone but later met face to face.  *See id.* at 10:19 – 11:23. Counsel testified that the first face-to-face meeting with Norton was not the first time he discussed the case with her.  *Id.* at 11:19-25.  Trial counsel testified that during the face-to-face meeting, he discussed with Norton the charges, the strengths of the Government's case, possible defenses, possible witnesses, including the possibility of the minor-victim testifying as a witness, and the communications that the Government intended to present as evidence.  *Id.* at 11:24 – 13:2, 20:18 – 21:16.  They also developed a defense strategy- that Norton was only flirting and/or fantasizing with the minor victim and did not travel from Connecticut to Pennsylvania with the intent to engage sexual contact with the minor victim.  *Id.* at 13:11-17.  Trial counsel explained that the defense strategy did not include the alleged missing communications.  *Id.* at 14:1-6.  Trial counsel also testified about two guilty plea offers from Government counsel, which Norton rejected.  *See* Ev. N.T. 16:21 – 17:22.

The Government's first plea offer was made to Norton's former trial counsel.  *See id.* at 16:21-25; Ex. 4, ECF No. 127-1.  In this offer, the Government agreed to dismiss Count One if

---

[7]    For example, Norton testified at the evidentiary hearing that her communications with the minor victim were mere fantasy, but the evidence negates her testimony.  Moreover, the jury, with which this Court agrees, rejected similar trial testimony from Norton.  Even Norton's trial counsel opined that she was lying.  *See* Ev. N.T. 14:3 – 26:15.

[8]    For example, Norton gave conflicting testimony at the evidentiary hearing about who she thought would be calling the minor victim as a witness.  *Compare* Ev. N.T. 76:24 – 77:3 (Norton initially testified that she was surprised when she learned the Government would not be calling the minor-victim as a witness.), *with id.* at 83:4-5 (Norton later testified that she believed "*we* were definitely going to be calling [the minor-victim] as a witness." (emphasis added)).

Norton pled guilty to Count Two charging travel in interstate commerce with intent to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b).[9]  *See* Ex. 5, ECF No. 127-2.  The plea, made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), provided that the parties agreed to a sentence of "71 months' imprisonment, a mandatory minimum five years' supervised release up to a lifetime of supervised release, a fine in the discretion of the Court, a $100 special assessment, and, if found to not be indigent, an additional mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3014."  *Id.*  On November 3, 2019, trial counsel emailed Norton regarding the plea offer and sentencing possibilities.  *See* Ex. 3.  Trial counsel, whose email mentioned the strength of the evidence against Norton, advised her to "take a long hard look at the Agreement. . . . Sign it and move forward."  *Id.*  Norton rejected the Plea Agreement.  In the Government's second plea offer, which was conveyed to trial counsel on November 8, 2019, the Government again agreed to dismiss Count One if Norton pled guilty to Count Two, but did not include a specific sentencing recommendation.  *See* Exs. 1-2.  Norton also rejected the second plea offer.  *See* Ex. 2.  Thereafter, on November 18, 2019, the Government advised trial counsel the plea offer was withdrawn.  *See id.*

As to the purportedly missing messages that are part of Norton's habeas claims, trial counsel testified that he had a discussion with Norton "about alleged missing messages, and [] tried the best [he] could to dispel her of that fantastical representation and to not pursue that at the time of the trial."  Ev. N.T. 14:3-8.  Counsel referred to Norton's "beliefs" about the purportedly missing messages and her "beliefs" about what the minor victim would testify to.  *See id.* at 15:17 – 18:20.  He "interrogated Ms. Norton about the basis for [her claim of missing

---

[9]    Unlike Count One, Count Two did not require a mandatory minimum term of imprisonment.  Count Two carried a maximum sentence of thirty years' imprisonment and a mandatory minimum of five years supervised release up to lifetime supervised release.

7

messages] and made a determination that it was unsupported." *See id.* at 23:8 – 24:7.  Trial counsel explained "it was apparent to [him] that [Norton] concluded the only way, plausible way, to eat into that voluminous amount of evidence that supported the Government's case was to say, listen, they don't have all the text messages," but when he "ask[ed] Ms. Norton any questions about these alleged missed messages, [he] didn't get any kind of information that [he] could have acted on to confirm it in any way, shape, or form." *Id.* at 25:9-19.  Norton never specified the form of the missing messages to which she was referring or explained what the missing messages were supposed to say or how they were going to help her. *Id.* at 49:14-15; 65:9-11.  Counsel testified that she "made it up. Just like she made up that she was 25. Just like she made up that she didn't have any children. . . ." *Id.* at 26:10-12.  Because her suggestion of missing messages "wasn't true," trial counsel did not investigate further. *See id.* at 25:20 – 26:15.  He testified that Norton was not preoccupied about the missing communications; rather, it was "maybe once or twice ever brought up again, but it was not a protracted discussion, or complaint, or allegation by Ms. Norton throughout the course of the representation." *Id.* at 21:17 - 22:3.

 As to Norton's other habeas claims, trial counsel testified that he did not interview the minor victim because the victim "wasn't [an] integral component and his participation in the case wasn't the cornerstone of how the case was handled." *Id.* at 30:1-5.  Counsel explained that regardless of how the minor victim testified, he "didn't believe it was going to be credible for [him] to base our strategy on." *Id.* at 33:11-13; 56:6-7 ("I didn't have a sufficient basis of anything to risk making [the minor-victim] a focal point of our defense.").  Trial counsel stated that he also considered the potential impact on the jury if the minor victim lied "or gave testimony in some way, shape, or form [to] help Norton, that he perceived it would help her, but it was readily apparent that it was not truthful, what kind of fallout that would have to the jury."

*Id.* at 55:4-9.  Trial counsel "thought, in [his] judgment, the Government had more than enough evidence to attack [the minor victim if he were to testify that the communications were all fantasy] and [] thought the byproduct of that was going to be an impact on the jury to say this was all caused by [Norton] and he caused her significant harm."  *Id.* at 58:17-21. *See also* Ex. 3 (Trial counsel's November 3, 2019 email to Norton stating: "Lastly note as I discussed with you, just because the minor may not be a cooperating witness in no way means you win.  There are several different ways the [] Govt. can & will seek to move forward.").  He believed that the minor victim's testimony "would have been devastating to Ms. Norton."  Ev. N.T. 59:7-12.  Trial counsel testified that he "anticipated" the Government would call the minor-victim as a witness, but took advantage when the Government did not because it allowed him to argue that the Government had an obligation to produce the victim, and "thought at least one person on the jury that would have said . . . Norton [] has a right to expect that the other half of the equation is going to testify, so this isn't fair" to support his argument on for an acquittal.  *See id.* at 31:12-14; 60:15 – 61:5.  Trial counsel, who testified that he "had no legitimate basis to anticipate that [the minor victim] would testify in any way, shape, or form other than what was presented in the Government's discovery, and through the text message exchanges," *id.* at 32:19-22, reasoned that simply interviewing the victim would have impacted how the Government presented its case and "there was a danger in terms of approaching him how he was going to react," *id.* at 32:15 – 33:1.

Norton testified at the evidentiary hearing, corroborating that trial counsel discussed with her: the charges, the strengths and weaknesses, if any, the Government's case, potential defenses, and the identity of any potential Government witnesses.  *See id.* at 72:7-14.  Norton confirmed that her communications with the minor victim via telephone or through PlayStation were not

recorded. *See id.* at 73:1-5. She testified that "a lot of our communication was through the microphone on the PlayStation, and as well as text messages. And there was a vast amount that was missing." *Id.* at 73:11-13. Norton testified that she rejected the plea agreement because she thought the minor victim would testify that they were not meeting to have sex and about the missing messages that would have shown they "were flirting and/or fantasizing this whole thing, and he knew it." *See id.* at 74:14-25, 75:19-25. She stated: "the only reason I was going to trial is -- was to be able to have [the minor victim] cross-examined, or I wouldn't had went at all." *Id.* at 76:1-5. *See also id.* at 78:22-24. Norton testified that had the minor victim not been able to corroborate her version, which counsel would have known had he interviewed the minor victim, she would not have gone to trial. *See id.* at 79:8-20. Norton stated that trial counsel advised her the minor victim would testify at trial, *id.* at 75:1-3, but gave conflicting testimony about who she thought would be calling him as a witness, *see* footnote 7 *supra*. at 76:24 – 77:3. Norton testified that after opening statements, she spoke with trial counsel, who stated Norton would need $500 for him to prepare a motion to have the minor victim at trial, which she agreed to provide the following day. *See* Ev. N.T. at 77:10-21. Norton testified that trial counsel indicated he would file the motion. *Id.* at 77:21-23. The next morning, Norton brought the money to court, but trial counsel had not filed a motion or prepared a subpoena; instead, he indicated that Norton needed more money and that they could not stop the trial while she secured the money. *See id.* at 77:12-15. Norton testified that she then had no choice but to testify, which she and trial counsel had not prepared. *See id.* at 78:15-18. She agreed that before her trial testimony, the Court colloquized her on her right to, or not to, testify and that although she knew trial counsel had not secured the appearance of the minor victim, she did not raise any concerns with the Court. *See id.* at 85:2 -86:5.

## II.      LEGAL STANDARDS

### A.      Motion to Vacate under 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack.  *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002).  Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'"  *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).  There is a one-year period of limitations to § 2255 motions that runs "from the latest of . . . the date on which the judgment of conviction becomes final. . . ."  28 U.S.C. § 2255(f).

### B.      Ineffective Assistance of Counsel  – Review of Applicable Law

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense.  *Strickland v. Washington*, 466 U.S. 668 (1984).  There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions.  *Id.* at 689 (explaining that courts should not second-guess counsel's assistance").  The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland* test.  *Id.* at 86.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (internal quotations

omitted). "[I]t is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (citing *Strickland*, 466 U.S. at 689-90). To establish prejudice under the second element, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The court must consider the totality of the evidence, and the burden is on the defendant/petitioner. *Strickland*, 466 U.S. at 687, 695.

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). The "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that . . . the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 163. Where the ineffectiveness is based on counsel's failure to investigate, "[t]o satisfy *Strickland*'s prejudice [requirement, the defendant] must show that, but for his counsel's inadequate investigation, there is a reasonable probability that counsel would have found [the uninvestigated] evidence favorable to his claim of innocence, thus undermining confidence in his conviction." *United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008). *See also Lewis v. Mazurkiewicz*, 915

F.2d 106, 113 (3d Cir. 1990) ("As *Strickland* made clear, trial counsel was not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel was simply required to exercise reasonable professional judgment in deciding whether to interview" the witness.). "[W]hen basing a claim of ineffective assistance of counsel on the failure to call a particular witness, there must be a clear showing that the testimony would have been material and favorable, and a movant must make a specific showing as to what the evidence would have been, and prove that this witness's testimony would have produced a different result." *United States v. Howard*, No. 4:17-CR-00291-04, 2024 U.S. Dist. LEXIS 51889, at \*15 (M.D. Pa. Mar. 22, 2024) (internal quotations omitted). *See also Manchas v. Superintendent of SCI Huntingdon*, 428 F. App'x 184, 190 (3d Cir. 2011) ("Witness selection is entrusted to counsel's sound judgment, not to the defendant.").

III.    **ANALYSIS**

    A.    **Ground One**

Norton argues that she was unable to make an informed decision about proceeding to trial or pleading guilty because trial counsel led her to believe she could confront the minor victim at trial. This argument is refuted by the record in at least four ways. First, trial counsel testified that he merely "anticipated" the Government would call the minor victim as a witness, not that he informed Norton the Government would call the minor victim as a witness. Because counsel's "anticipation" is consistent with other information he gave Norton, he did not mislead her. Second, trial counsel emailed Norton on November 3, 2019, explaining that "the minor may not be a cooperating witness . . ., [but t]here are several different ways the [] Govt. can & will seek to move forward" (without the minor victim's testimony). *See* Ex. 3. Third, Norton testified at the evidentiary hearing that when she asked trial counsel if she would be allowed to a

face her accuser, trial counsel explained that the minor victim was not technically her accuser, it was the Government (which suggests that she might not have the opportunity to face the victim in court). *See* Ev. N.T. at 83:4-10.  Fourth, Norton gave conflicting testimony at the evidentiary hearing that (1) she would not have gone to trial had she known she would not have the ability to cross-examine the minor victim, *see* Ev. N.T. at 78:22-24, and (2) she would not have gone to trial if the victim had been interviewed and had not been able to corroborate her allegation of missing message, *see id.* at 79:15-20.  The reasons Norton gave at the evidentiary hearing for why she refused to accept the plea offer differed to suit her claims.  These reasons also differed from her pre-trial statements to trial counsel.  At the time she rejected the plea offer, Norton told counsel it was because she "didn't do [it]" and "didn't meet him to have sex."  *See* Ex. 2. Notably, Norton continued to maintain her innocence throughout trial, at sentencing, and even at the evidentiary hearing.  *See* N.T. at 30:11-14, Sentencing; Ev. N.T. at 73:18-19 and 81:15-18 (Norton testified that her relationship with the minor victim was not real, that they were joking, teasing, and flirting.).

Considering the first three reasons discussed above, this Court concludes that Norton has failed to show that trial counsel's advice during the plea bargain process was erroneous or ineffective.  *See United States v. Granado*, No. 09-471-6, 2016 U.S. Dist. LEXIS 167025, at *8 (E.D. Pa. May 6, 2016) (denying the petitioner's claim that he rejected a plea offer based on counsel's defective advice because, contrary to the petitioner's allegation, trial counsel never told the petitioner his statements would be suppressed).  As to the fourth reason just discussed and given Norton's self-serving and conflicting testimony at the evidentiary hearing as to why she rejected the plea offer, this Court finds that her stated reasons at the time of the plea offer, which were consistent with her trial testimony, statements at sentencing, and certain testimony at the

evidentiary hearing, to be the most likely. *See id.* ("That Petitioner continues to maintain his innocence belies his testimony that he would have accepted any purported plea offer."). Regardless, this Court finds Norton's testimony that she would not have accepted the plea offer but for counsel's ineffectiveness to be unpersuasive. *See Blackman v. United States*, No. 2:12-02509, 2014 U.S. Dist. LEXIS 37730, at *8 (D.N.J. Mar. 21, 2014) (determining the petitioner's claim, that but for counsel's ineffectiveness, he would have accepted the plea offer, "cannot be reconciled with [his] steadfast protestations of innocence"). Norton has therefore also failed to establish prejudice. *See Rodriguez v. United States*, No. 18-10598 (RBK), 2022 U.S. Dist. LEXIS 200410, at *25 (D.N.J. Nov. 2, 2022) (concluding that the petitioner failed to establish prejudice under *Strickland* because his "allegations that he would have accepted the plea offer are not credible").

Ground one is denied.

## B.      Ground Two

The second ground for habeas relief consists of two arguments. First, Norton asserts that trial counsel was ineffective for failing to investigate a discrepancy in the phone records and failing to present additional text messages; but she offers no evidence of a discrepancy in the records or of any additional messages. Trial counsel discussed with Norton the alleged missing messages before trial, but was unable to "get any kind of information that [he] could have acted on to confirm it in any way, shape, or form." *See* Ev. N.T. at 25:9-19. Norton therefore fails to show how his performance was deficient. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to

15

a proper assessment of counsel's other litigation decisions."); *Evdokimow v. United States*, No. 19-14130, 2022 U.S. Dist. LEXIS 13110, at *42 (D.N.J. Jan. 25, 2022) ("When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." (quoting *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011)).  In the absence of any evidence or specific information about the alleged discrepancy and missing messages, Norton also fails to show there is a reasonable probability that the outcome of her trial would have been different had counsel investigated and/or presented evidence of additional messages.  *See United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) (denying the infectiveness claim based on counsel's failure to investigate because the defendant's "suggestion that the evidence 'undoubtedly' would have been favorable to him is unsupported by the record and wholly speculative"); *Abbatiello v. Emig*, No. 21-272, 2025 U.S. Dist. LEXIS 214061, at *31 (D. Del. Oct. 30, 2025) (rejecting the petitioner's failure-to-investigate claim where the record did not support the petitioner's assertion that his cell phone records were incomplete or edited because the petitioner could not demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to investigate the details of the phone records).  Even assuming the allegedly missing messages would have supported Norton's defense of fantasy, they would not have changed the outcome of the trial given the overwhelming evidence of intent, which is discussed below regarding ground five.  *See Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (reasoning that where the guilty verdict had overwhelming record support, "it would take a considerable amount of new, strong evidence to undermine it"); *United States v. Basking*, No. 19-193, 2023 U.S. Dist. LEXIS 125775, at *12 (W.D. Pa. July 19, 2023) (concluding that where the additional "testimony would have been

insufficient to undermine the overwhelming evidence of guilt," the defendant failed to show prejudice from counsel's failure to present the testimony). Norton's suggestion that she would have accepted the plea offer had she known the minor victim could not corroborate the missing messages is also unpersuasive for the reasons discussed regarding ground one (explaining that Norton gave conflicting, self-serving testimony as to why she rejected the plea offer, which could not be reconciled with her protestations of innocence). *See Rodriguez*, 2022 U.S. Dist. LEXIS 200410, at *25; *Granado*, 2016 U.S. Dist. LEXIS 167025, at *8; *Blackman*, 2014 U.S. Dist. LEXIS 37730, at *8.

Second, Norton asserts that trial counsel was ineffective for not interviewing the minor victim, but fails to show that she was prejudiced or that counsel's strategy was unreasonable. Norton suggests that the minor victim could have provided information about the missing messages to trial counsel if he was interviewed, but this is mere speculation and therefore insufficient to show that counsel's failure to investigate resulted in prejudice. *See United States v. Kennedy*, No. 13-240, 2018 U.S. Dist. LEXIS 217015, at *12 (W.D. Pa. Dec. 28, 2018) (concluding that the defendant failed to show he was prejudiced by counsel's failure to investigate the lost dash cam footage and to interview state troopers because the claims were "premised on unsupported speculation that the fruits of any such investigations would have resulted in the discovery of exculpatory evidence"). Norton's contention that the victim would have corroborated her fantasy defense is also nothing more than speculation, which is insufficient to show prejudice. *See Ellison v. United States*, 120 F.4th 338, 342 n.3 (3d Cir. 2024) ("[S]howing *Strickland* prejudice may not be based on mere speculation about what the witnesses . . . might have said. Rather, [u]nder usual circumstances, we expect that 'information [obtainable through an adequate investigation] would be presented to the habeas court through

17
062426

the information of the potential witnesses." (cleaned up)).  Furthermore, trial counsel testified that simply interviewing the minor victim would have impacted how the Government presented its case and "there was a danger in terms of approaching him how he was going to react."  Ev. N.T. 32:15 – 33:1.  Trial counsel therefore exercised professional judgment in deciding not to interview the victim.  *See Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) ("As *Strickland* made clear, trial counsel was not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel was simply required to exercise reasonable professional judgment in deciding whether to interview" the witness.).  "Trial counsel receives a great deal of latitude in determining which witnesses to interview and call for testimony." *United States v. Brown*, No. 09-602-3, 2015 U.S. Dist. LEXIS 100825, at *21 (E.D. Pa. July 31, 2015) (citing *Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987)).  Giving deference to counsel's judgment, this Court finds that Norton has not shown counsel's decision not to interview the minor victim was unreasonable.  *See Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Ground two is denied.

### C.      Ground Three

Norton contends that trial counsel did not adequately prepare for trial because he did not prepare for the Government proving its case without calling the minor victim as a witness; however, there is nothing in the record to support counsel's alleged lack of preparedness in this regard.  To the contrary, trial counsel's email dated November 3, 2019, informing Norton that, *inter alia*, "the minor may not be a cooperating witness" and "[t]here are several different ways the [] Govt. can & will seek to move forward," *see* Ex. 3, shows that counsel was prepared for

18
062426

the Government trying its case without the minor victim's testimony. Trial counsel took advantage when the Government did not call the minor victim by arguing to the jury that they should consider the failure in weighing the evidence. *See* N.T. 201:25 – 202:21, Defendant's Closing Argument, ECF No. 89 ("Now, among the other things that you can consider, [] is evidence that you don't have. . . . The Government could have produced [the minor victim] . . . [b]ut in its determination about the case, they didn't think it was necessary. I'd respectfully submit that all of the evidence, especially, of the individual, who was the alleged victim meets the standard requirement that anybody would require in their mind for due process to make a fair determination."). Norton has therefore failed to show that counsel's performance was deficient. *See Sporish v. Harlow*, No. 12-4142, 2015 U.S. Dist. LEXIS 178337, at *127 (E.D. Pa. May 7, 2015) (denying habeas relief based on the Government's failure to disclose evidence because defense counsel turned the missing evidence to the defendant's advantage). Additionally, counsel's trial strategy was not dependent on the testimony of the minor victim and Norton has not shown that counsel's strategy would have been different if he was more prepared. *See Freeman v. Sawtelle*, No. 23-3578, 2026 U.S. Dist. LEXIS 111052, at *67-68 (E.D. Pa. Apr. 16, 2026) (rejecting the petitioner's claim that trial counsel was not prepared for the defendant to testify because nothing would have changed in counsel's trial strategy). Finally, Norton has not established a reasonable probability that the outcome of the trial[10] would have been different. *See Gist v. Sorber*, No. 22-3463, 2025 U.S. Dist. LEXIS 184557, at *34 (E.D. Pa. Aug. 1, 2025) (denying habeas relief on the defendant's claim that counsel was not prepared because the defendant did not explain what would have changed if counsel was adequately prepared or that

---

[10]     To the extent prejudice is based on Norton's rejection of the plea offer based on her alleged belief that the minor victim would testify, this was denied as meritless in ground one.

there was evidence sufficient to raise a reasonable likelihood that the result of the trial would have been different); Ev. N.T. 59:7-12 (Trial counsel testified that he believed the minor victim's testimony "would have been devastating to Ms. Norton.").

Ground three is denied.

### D.    Ground Five

Norton asserts that trial counsel should have called the minor victim as a rebuttal witness. She suggests the minor victim would have supported her contention that their conversations were mere fantasy, but offers no evidence to substantiate her suggestion.  Norton's mere speculation as to what the victim would have testified to is insufficient to establish her claim.  *See Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) ("Speculative and unspecified testimony cannot be used to demonstrate that counsel's representation fell below the objective standard of reasonableness."); *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (holding that "mere speculation" about what a witness would have testified to is insufficient to establish a reasonable probability that the jury's verdict would have been different if not for counsel's alleged ineffectiveness); *United States v. Banks*, No. 1:18-CR-0131, 2025 U.S. Dist. LEXIS 125609, at *11 (M.D. Pa. July 2, 2025) (concluding that the defendant's "speculative and unspecified purported testimony of two witnesses . . . falls far below the threshold for showing Attorney White was ineffective for failing to call these witnesses at trial").  Even if the minor victim were to testify as Norton speculates, she has failed to establish that the testimony would have been favorable.  *See United States v. Howard*, No. 4:17-CR-00291-04, 2024 U.S. Dist. LEXIS 51889, at *15 (M.D. Pa. Mar. 22, 2024) (concluding that the defendant failed to make a sufficient showing as to what witness's testimony "actually would be, or that it would be favorable").  As trial counsel explained, if the minor victim "gave testimony in some way, shape, or form [to]

help Norton, that he perceived it would help her, but it was readily apparent that it was not truthful," there could have been "fallout [with] the jury." *See* Ev. N.T. 55:4-9.  Trial counsel reasoned that if the minor victim were to testify that the communications were all fantasy, the jury could have believed "this was all caused by [Norton] and he caused her significant harm." *See id.* at 58:17-21.  Thus, Trial counsel made a reasonable strategic decision not to call the minor victim as a rebuttal witness.[11]  *See Manchas v. Superintendent of SCI Huntingdon*, 428 F. App'x 184, 190 (3d Cir. 2011) (determining that counsel's decision not to call a particular witness "fell within the wide range of reasonable professional assistance as contemplated by Strickland's first" element).

Moreover, Norton has failed to establish prejudice because the jury heard[12] and rejected her defense that the communications were mere fantasy.  *See United States v. Donahue*, No. 3:08cr221, 2014 U.S. Dist. LEXIS 84669, at *22-24 (M.D. Pa. June 23, 2014) (finding no merit to defendant's claim that counsel was ineffective in failing to interview/investigate witnesses that could have supported his defense because the "defense was presented and rejected by the jury at trial").  The reason the jury rejected her defense was not the result of trial counsel's failure to call the minor victim to testify.  *See id.* ("The fact that the jury did not accept the defense was not due to ineffective lawyering or lack of evidence.").  Rather, Norton's defense of fantasy was

---

[11]     Given counsel's strategy to not call the minor victim as a witness makes unavailing Norton's suggestion that by not subpoenaing the victim, trial counsel was unable to argue he was "unavailable" and seek a missing witness instruction.  Moreover, assuming trial counsel had subpoenaed the victim and assuming that the victim failed to appear, a missing witness instruction would nevertheless have been denied because the minor victim was not unavailable to the defense. *See* Comment to Third Circuit Model Instruction 4.16 (explaining that the instruction is not appropriate when the witness is equally available to both parties).

[12]     *See, e.g.* N.T. 43:10-16, Day III, ECF No. 89 ( Norton testified: "I didn't mean any type of real relationship, . . . it was flirting, it was just a fantasy a. . . I never intended to do those things at all."); 103:20 ("It was fantasy."); 105:6 (". . . it was all part of the fantasy"); 110:25 (". . . in my fantasy. . .").

contradicted by, *inter alia*, the anger she expressed at the minor victim when he changed the name of their PlayStation group, which meant that she would have to be invited to it again and that it was opened up to other players. *See* N.T. 126:22 – 129:25, Day II. Norton messaged the minor victim: "I knew you were fucking with my head and I chose to listen to you, again, fool me once. . . . Did you thin[k] I wouldn't see your new changes, nice touch. So, really, fuck you. . . ." *Id.* at 127:8-13. After the minor victim apologized, *see id.* at 128:2-3, Norton replied: "Don't be sorry, I'm not taking up any more of your time today, I get it, your changes were made crystal-clear. . . . you're not sweet talking out of this one again. . . . I know that you are playing me," *id.* at 128:4-11. Norton's defense of mere fantasy was also inconsistent with the explicit nature of the texts. For example, a week before Norton traveled across several states to see the minor victim, she wrote to him: "Just try and forgive me after I get done with you, especially, the first time, we do it, 'cause I'm sexually frustrated because of you and you're a virgin and I'm going to tear that dick up." *Id.* at 119:7-10. The victim responded: "Don't worry, I'll be ready for it." *Id.* at 119:14-15. Additionally, Norton's claim that she lacked sexual intent when she traveled to Pennsylvania was negated by her clear expression of jealousy the day before. She messaged the minor victim: "I asked you before, if you were pursuing anyone else, I think you are. I think, I'm convenient when it suits you, like, I said, fool me, once, you go get her without me hanging on. I like you, but I can't do that. . . . I was gonna drive eight hours to visit you and [you] are acting, like, you can't be bothered. I am tired of throwing myself at you, there is only so much rejection, I can take from one person." *Id.* at 129:4-17. In light of the overwhelming evidence of guilt, Norton has failed to establish that she was prejudice by counsel's decision not to call the minor victim as a witness. *See United States v. Meehan*, No. 11-440-01, 2025 U.S. Dist. LEXIS 38043, at *65 (E.D. Pa. Mar. 4, 2025) (denying the defendant's claim that counsel

was ineffective for failing to call a rebuttal witness "given the overwhelming evidence of Petitioner's guilt, there was no prejudice"); *United States v. Basking*, No. 19-193, 2023 U.S. Dist. LEXIS 125775, at *11-12 (W.D. Pa. July 19, 2023) (reasoning that the appeal court's conclusion that the failure to call the witness "would be harmless error in light of the overwhelming evidence of Basking's guilt . . . conclusively demonstrate that [counsel] was not ineffective for failing to call" the witness).

Ground five is denied.

### E.    Ground Six

Norton asserts that trial counsel was ineffective for not filing pretrial motions to: (i) make the minor victim testify as a witness, and (ii) secure missing discovery regarding phone records. Both arguments fail for the reasons discussed above and are further described below.

As to counsel's failure to file a pretrial motion to have the minor victim testify at trial, the decision relates to trial strategy over which trial counsel had decision-making authority.  *See Gov't of the V.I. v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996) ("The ABA Standards for Criminal Justice recognize as being among the non-fundamental issues reserved for counsel's judgment '. . . what trial motions should be made . . . .' ABA Standards § 4-5.2(b). Several courts have also recognized witness selection as being among the non-fundamental decisions that counsel is entitled to make at trial.").  "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Norton fails to overcome this presumption by showing that counsel's trial strategy, which was not dependent on the minor victim's testimony, was unreasonable.  *See United States v. Lynn*, No. CR 09-279, 2014 U.S. Dist. LEXIS 178851, at *7-12 (W.D. Pa. Dec. 30, 2014) (concluding the petitioner

failed to show that counsel's tactical decision not to call a particular witness was unreasonable). Because trial counsel reasonably believed the minor victim's testimony "would have been devastating to Ms. Norton," *see* Ev. N.T. 59:7-12, counsel was not ineffective for failing to file a pretrial motion to secure the victim's testimony at trial, *see Werts v. Vaughn*, 228 F.3d 178, 190 (3d Cir. 2000) (holding that "ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests"). Norton also fails to show, for the reasons discussed above, that she was prejudiced by trial counsel's failure to file a pretrial motion regarding the minor victim's testimony.

Next, Norton has not offered any evidence to support her speculations that the discovery provided by the Government was incomplete or that there were missing phone records, nor has she shown, for the reasons discussed above, that she was prejudiced by the alleged missing records. *See Melter v. United States*, No. 15-243, 2016 U.S. Dist. LEXIS 168966, at *27-28, *41-43 (W.D. Pa. Dec. 7, 2016) (rejecting the claim that defense counsel rendered ineffective assistance of counsel by failing to file a motion for discovery because the petitioner's "allegations [we]re vague, conclusory, and unsupported by facts" and failed "to show how any of this alleged conduct on the part of defense counsel prejudiced him"); *Shumate v. United States*, No. 97-2593, 1998 U.S. Dist. LEXIS 8072, at *7-8 (E.D. Pa. June 3, 1998) (concluding that where the government provided all discovery, the petitioner had not remotely demonstrated that counsel's failure to file a pre-trial discovery motion was professionally deficient or prejudiced him in any way). Because Norton, who was not preoccupied about the missing communications, *see* Ev. N.T. 21:17 - 22:3, failed to provide trial counsel "any kind of information that [he] could have acted on to confirm it in any way, shape, or form," *see* Ev. N.T. 25:9-19, she also cannot establish that his failure to file a pretrial motion for alleged additional discovery was deficient.

*See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (holding that "counsel cannot be deemed ineffective for failing to raise a meritless claim"); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Ground six is denied.

**F.      There is no basis for the issuance of a certificate of appealability.**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth herein, Norton has not made a substantial showing of the denial of a constitutional right.

**IV.   CONCLUSION**

Norton's habeas arguments center around two general areas: that trial counsel was ineffective for his actions/inactions regarding (1) failure to secure the trial testimony of the minor victim, and (2) failure to obtain allegedly missing phone records. As to the absence of the minor

victim at trial, trial counsel was prepared for this possibility and took advantage of the victim's absence. The defense trial strategy, which was not dependent on the victim's testimony, would not have changed if he had testified. Counsel's decisions regarding whether to interview and call the minor victim were matters of trial strategy and are presumed to be correct. Norton fails to overcome this presumption because trial counsel reasonably believed the victim's testimony would have been harmful to Norton. Her mere speculation about what the victim would say is insufficient to establish she was prejudiced by counsel's performance. Second, Norton offers no evidence to substantiate her allegations that there were additional phone records and/or text messages, nor does she establish that the allegedly missing records would have changed the outcome of her trial. She also failed to give trial counsel sufficient information about the alleged missing evidence from which he could have acted. Moreover, even if the victim had testified and additional messages were presented to the jury, it is not reasonably probable that the verdict would have been different given the overwhelming evidence of Norton's guilt. Finally, to the extent Norton suggests that counsel's failure in both regards caused her to reject a plea offer, her testimony was not credible and is contradicted by her pre-trial statements about why she rejected the plea offer, which was unrelated to trial counsel's performance. The Motion to Vacate pursuant to 28 U.S.C. § 2255 is therefore denied and there is no basis for the issuance of a certificate of appealability.

A separate Order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge